# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### NOVEMBER 17, 2004 Session

## GSB CONTRACTORS, INC. v. HARRY F. HESS, JR. and CONNIE HESS

### Direct Appeal from the Circuit Court for Shelby County
#### No. CT-001544-00      Robert A. Lanier, Judge

### No. W2003-03068-COA-R3-CV - Filed April 15, 2005

Following a hail storm which severely damaged the Appellees' home, the Appellee contracted with the Appellant, a construction contractor, to repair the damage. The Appellees' insurance policy covered the damage done to the home by the hail storm, but the Appellees entered into a collateral agreement with the Appellant to do additional work to the home. The insurance company paid for all work done by the Appellant in repairing the damage from the storm, but the Appellees refused to pay the balance due on work completed under the collateral agreement citing poor workmanship by the Appellant's subcontractors. The Appellant subsequently filed suit against the Appellees in general sessions court seeking to recover the balance owed. Following a judgment in favor of the Appellant, the Appellees appealed to the circuit court and filed a counterclaim against the Appellant. Following a trial, the circuit court ruled in favor of the Appellees. In proving their damages, the Appellees presented the testimony of two expert witnesses at trial. The circuit court ruled that the proper measure of damages was the cost of repairing the defective work. The Appellant filed an appeal to this Court contesting the trial court's selection of "cost of repair" as the appropriate measure of damages in this case, as well as the trial court's evidentiary rulings regarding certain testimony. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Michael R. Tucker, Memphis, TN, for Appellant

Anthony C. Pietrangelo, Memphis, TN, for Appellees

# OPINION

## I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Harry F. Hess ("Mr. Hess") and Connie Hess (collectively with Mr. Hess, the "Homeowners" or "Appellees") purchased their present home, which was constructed in 1982 and is located in Lakeland, Tennessee, in March of 1989 for $285,000.00. In May of 1998, a severe hail storm caused damage to the home, particularly to the roof, chimney, skylights, windows, screen doors, cedar siding, decks, and awning. The Homeowners' insurance policy, held with West American Insurance Company ("West American"), covered the damage to their home. Accordingly, the Homeowners filed a claim with West American for the hail damage. The Homeowners, dissatisfied with the first contractor selected to repair the damage to their home, selected GSB Contractors, Inc. ("GSB" or "Appellant"), a Tennessee corporation based in Memphis, Tennessee, to perform the repair work.

By letter dated June 30, 1998, GSB provided the Homeowners with an itemized estimate totaling $58,040.41, which represented the cost of repairing the home. GSB and the Homeowners entered into an agreement that same month, and GSB began working on the home several weeks later. Around December 30, 1998, GSB presented the Homeowners with an invoice in the amount of $44,129.63 for repairs done to the home up to that point in time. West American issued a check designated for "partial draw for hail damage restoration to dwelling," paying the invoice in full.

Around January of 1999, the Homeowners and GSB entered into a collateral agreement calling for GSB to perform additional work on the Homeowners' home at the Homeowners' own expense. Apparently, West American had agreed only to fix the damage done to two sides of the Homeowners' home. In addition to other projects, the Homeowners asked GSB to replace the siding on the other two sides of the home so the entire house would have a uniform appearance. On January 5, 1999, GSB submitted another invoice to the Homeowners in the amount of $20,111.52 for the additional work done to the home. That same month, the Homeowners issued a check drawn on their personal account to GSB in the amount of $12,000.00. On August 16, 1999, West American submitted another check to GSB in the amount of $21,351.65 designated for "final draw for hail damage restoration to dwelling."

During the course of their relationship, the Homeowners expressed their dissatisfaction with the work being done by GSB. In some instances, GSB, at the request of Mr. Hess, had its subcontractors re-install or redo some of the work already completed on the home. The Homeowners, dissatisfied with the work performed by GSB, refused to pay the remaining balance owed for the additional work they requested. In March of 2002, GSB filed suit in the General Sessions Court of Shelby County seeking to recover the outstanding balance in the amount of $8,461.62. The general sessions court ruled in favor of GSB, and the Homeowners filed an appeal to the Circuit Court of Shelby County. In the circuit court, the Homeowners filed a counterclaim against GSB alleging breach of contract, negligence, and misrepresentation. Additionally, the

Homeowners filed a third-party complaint against West American alleging causes of action for breach of contract, indemnity, and promissory estoppel. After answering the third-party complaint, West American subsequently filed a motion to amend its answer to add a cross-claim against GSB for indemnity. Shortly thereafter, the Homeowners entered a voluntary non-suit against West American.[1]

During the course of the four day trial, the Homeowners presented evidence to prove that the work performed by GSB was unworkmanlike, necessitating the need for corrective work to the home. Conversely, GSB contended that all of the work performed by subcontractors working for GSB was performed in a workmanlike manner, and, in an attempt to satisfy the Homeowners, some of the work had been redone. The trial court, sitting without a jury, entered its judgment on November 14, 2003, in favor of the Homeowners, finding:

> The plaintiff has been paid, either by Defendant's insurance company or by Defendants, all but $8,461.62 of the contract figures. Defendants, on the other hand, offer evidence that it will cost $137,717.45 to correct the defective workmanship performed by the plaintiff. They deny, therefore, that they owe the plaintiff any amount, and seek the aforesaid sum as their damages.
>
> Although Defendants mention that part of their action is based upon allegations of negligence, in addition to breach of contract, the Court is of the opinion that, no matter how this case is viewed, it is one for breach of contract and not negligence. *Where a contractor fails to perform in a workmanlike manner, the cost of repairing the deficient work is the proper measure of damages, since the owner of the building is entitled to proper performance of the contract. Repair of deficient work may involve both additional activities necessitated by the deficient work and activities previously omitted, to proper performance in a workmanlike manner. McCray vs. Clinton County, 125 Ohio App. 3d 521, 708 N.E.2d 1075 (1998).* Similarly, the plaintiffs' action is one for breach of contract to pay for the work which was performed. The evidence shows that the plaintiff made several attempts to satisfy the defendants when presented with complaints about the workmanship performed by the plaintiff's subcontractors. It further shows, that the plaintiffs, especially Mr. Hess, were very particular about their house being properly repaired. There is a strong undercurrent in the evidence suggesting that the plaintiff regarded the defendant, Mr. Hess, as a chronic complainer, seeking more than he was entitled to. On the other hand, the evidence

---

[1] The record does not contain any ruling by the trial court on West American's motion. It is apparent, however, that, when the Homeowners dismissed their third-party complaint against West American, there was no longer a need for West American to seek indemnification from GSB.

also shows that he had a nice home and was concerned that it be properly repaired.

> Although there was conflicting evidence on most questions, the Court finds that the preponderance of the evidence is that the plaintiffs' subcontractors, (and, therefore, the plaintiff) did not perform most of their work in a good and workmanlike manner. . . . There are a number of particulars, however, in which the defendants and counter-plaintiffs have failed to carry the burden of proof in order to entitle them to damages.
>
> . . . .
>
> From the foregoing, therefore, the Court finds that the damages estimate by the Defendant's proposed contractor is excessive by $61,246.18, resulting in damages to the defendants of $76,471.27, which they are entitled to recover.

The trial court went on to provide that GSB should recover nothing in this case.

GSB subsequently filed an appeal to this Court. After reviewing the briefs submitted by the parties and hearing oral argument, we are of the opinion that all of the issues presented by the Appellant in this appeal fall into one of the following categories:

I.    Whether the trial court erred in determining the proper measure of damages to be the cost of repairing the deficient work performed by the Appellant; and

II.   Whether the trial court erred in either admitting or excluding certain evidence related to proving the Appellees' damages.

For the reasons set forth more fully herein, we affirm the trial court's ruling.

## II.
### LAW AND ANALYSIS

On appeal, GSB argues that the trial court erred in using the cost of repairing the Homeowners' home as the proper measure of damages in this case. In related sub-issues, GSB argues that the trial court erred in admitting, or failing to admit, certain evidence relating to the damages issue. We begin our analysis with the appropriate measure of damages in this case and address the sub-issues raised by the parties as they arise. In addition, the Homeowners are seeking their costs and attorney's fees associated with defending this appeal.

### A.
### *Measure of Damages*

GSB contends the trial court erred by applying the "cost of repair" as the appropriate measure of damages when a residential construction contractor fails to perform in a workmanlike manner.

-4-

The trial court, in determining that "cost of repair" was the appropriate measure of damages in this case, relied on the Ohio Court of Appeals decision in *McCray v. Clinton County Home Improvement*, 708 N.E.2d 1075 (Ohio Ct. App. 1998), where the court stated:

> Where a contractor fails to perform in a workmanlike manner, the cost of repairing the deficient work is the proper measure of damages since the owner of the building is entitled to proper performance of the contract. . . . In order to place a building in the condition contemplated by the parties at the time of the contract, "repair of deficient work may involve both additional activities necessitated by the deficient work, and activities previously omitted, but necessary, to proper performance in a workmanlike manner."

*McCray*, 708 N.E.2d at 1076 (citations omitted). GSB contends that no Tennessee cases have applied this legal principle to Tennessee contract law. It appears that GSB is arguing that the proper measure of damages in this case is the "difference-in-value" measure, although GSB cites to no authority for this proposition. Under this measure, "the owner's damages are measured by the difference in the value between the structure as delivered and the structure as contracted for." John P. Ludington, Annotation, *Modern Status of Rule as to Whether Cost of Correction or Difference in Value of Structures is Proper Measure of Damages for Breach of Construction Contract*, 41 A.L.R.4th 131 (1985).

In addressing this issue, we are guided by the following:

> Determinations concerning the amount of damages are factually driven. *See Loftis v. Finch*, 491 S.W.2d 370, 377 (Tenn. Ct. App. 1972). Thus, the amount of damages to be awarded in a particular case is essentially a fact question. *See Sholodge Franchise Sys., Inc. v. McKibbon Bros., Inc.*, 919 S.W.2d 36, 42 (Tenn. Ct. App. 1995); *Buice v. Scruggs Equip. Co.*, 37 Tenn. App. 556, 571, 267 S.W.2d 119, 125 (1953). However, the choice of the proper measure of damages is a question of law to be decided by the court. *See American Trust Inv. Co. v. Nashville Abstract Co.*, 39 S.W. 877, 881 (Tenn. Chan. App. 1896); *see also Business Men's Assurance Co. v. Graham*, 891 S.W.2d 438, 449 (Mo. Ct. App. 1994); *Town of Fifield v. State Farm Mut. Auto. Ins. Co.*, 119 Wis. 2d 220, 349 N.W.2d 684, 686 (Wis. 1984).

*Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998). Thus, in reviewing the trial court's selection of a damages measure, we are reviewing the trial court's conclusions of law. We review the decisions of the trial court on questions of law *de novo* with no presumption of correctness. *See*

*Johnson v. Welch*, No. M2002-00790-COA-R3-CV, 2004 Tenn. App. 86, at *26–27 (Tenn. Ct. App. Feb. 4, 2004); *Crowder Constr. Group, LLC v. Holland*, No. M2002-01840-COA-R3-CV, 2003 Tenn. App. LEXIS 662, at *8 (Tenn. Ct. App. Sept. 18, 2003).

"The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990) (citing *Action Ads, Inc. v. William B. Tanner Co., Inc.*, 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979); *Estate of Jessee v. White*, 633 S.W.2d 767 (Tenn. Ct. App. 1982)); *see also Hennessee v. Wood Group Enterprises, Inc.*, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991). For breach of a construction contract, the courts of the several states have typically applied either the "cost of repair" or the "difference-in-value" as the proper measure of damages. *See* John P. Ludington, Annotation, *Modern Status of Rule as to Whether Cost of Correction or Difference in Value of Structures is Proper Measure of Damages for Breach of Construction Contract*, 41 A.L.R.4th 131 (1985).

In *Edenfield v. Woodlawn Manor, Inc.*, 462 S.W.2d 237 (Tenn. Ct. App. 1970), this Court cited, with approval, the following general summary of these two damages measures:

> ["]As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather than the difference in value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained. On the other hand, the courts generally adhere to the view that if a builder or contractor has not fully performed the terms of the construction agreement, but to repair the defects or omissions would require a substantial tearing down and rebuilding of the structure, the measure of damages is the difference in value between the work if it had been performed in accordance with the contract and that which was actually done, or (as it is sometimes said) the difference between the value of the defective structure and that of the structure if properly completed. Despite this latter rule, however, there is some authority to the effect that damages for a contractor's breach of a contract to construct a dwelling, where it is not constructed in accordance with the plans and specifications, are the amount required to reconstruct it to make it conform to such plans and specifications, rather than the difference in loan or market value on the finished dwelling, since unlike a commercial structure, a dwelling has an aesthetic value and must be constructed as the

owner wants it, even though the finished dwelling may be just as good." 13 Am.Jur.2nd. pp. 79, 80, 81 Section 79.

*Edenfield*, 462 S.W.2d at 241. In *Edenfield*, a residential construction case, we examined a decision by the Alabama Supreme Court, which provided:

> "In regard to the case at bar it may be observed further that a distinction exists between a contract to construct a dwelling for the owner who plans to live therein and a contract to construct a commercial structure where the aesthetic taste of the owner is not so deeply involved. It seems to us that when an owner contracts to have a dwelling constructed he wants a particular structure, not just any structure that could be built for the same price. We, therefore, think that the trial court was correct in awarding damages equal to the amount required to reconstruct the dwelling so as to make it conform to the specifications, rather than adopting the difference in loan value on the dwelling as the measure of damages, as contended by appellant."

*Id*. (quoting *Fox v. Webb*, 105 So.2d 75, 82–83 (Ala. 1958)).

We went on in *Edenfield* to state, "[w]e think the Alabama Supreme Court's reason for applying a different rule to defective construction of a dwelling and defective construction of a commercial building is a valid one and is applicable in the instant case." *Id*. The Homeowners rely on our reasoning in *Edenfield* for the proposition that, in cases involving the defective construction of a residential dwelling, the *exclusive* measure of damages is "cost of repair." *See Birdwell v. McKinney*, No. 01A01-9701-CV-00023, 1997 Tenn. App. LEXIS 905, at *27 (Tenn. Ct. App. Dec. 17, 1997). To the contrary, the Homeowners have misconstrued our holding in *Edenfield*. In *Edenfield*, we merely noted that, in residential construction cases, a stronger case can be made that "cost of repair" is the proper measure of damages due to the aesthetic tastes of the owner. *Id*. at 241–42. Hence, we stated that "consideration for comfort and convenience is one of major importance in a building constructed as a dwelling place for the owner." *Id*. at 241–42.

Our subsequent case law supports the conclusion that "cost of repair" is not the exclusive measure of damages for breach of a residential construction contract. "*Generally*, the measure of damages will be the cost or repair *unless* the repairs are not feasible or the cost is disproportionate to the dimunition in value." *Radant v. Earwood*, No. 02A01-9802-CV-00029, 1999 Tenn. App. LEXIS 390, at *20 (Tenn. Ct. App. June 22, 1999) (emphasis added); *see also Estate of Jessee v. White*, 633 S.W.2d 767, 769 (Tenn. Ct. App. 1982). When selecting the appropriate measure of damages applicable in this case, we are mindful of the following:

As a general rule, the measure of damages for defects and omissions in the performance of a construction contract is the reasonable cost of the required repairs. *Estate of Jessee v. White*, 633 S.W.2d 767 (Tenn. App. 1982). This is especially true when the structure involved is the owner's home. *Edenfield v. Woodlawn Manor, Inc.*, 62 Tenn.App. 280, 462 S.W.2d 237 (1970). However, in the event that the cost of repairs is disproportionate when compared with the difference in value of the structure actually constructed and the one contracted for, the diminution value may be used instead as the measure of damages. *Redbud Cooperative Corporation v. Clayton*, 700 S.W.2d 551 (Tenn.App. 1985). However, *this rule is applicable only when proof has been offered on both factors*. The defendant argues that plaintiffs were required to offer proof of both factors so that the jury would be allowed to choose. We hold that the plaintiffs do not have the burden of offering alternative measures of damages. *The burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution in value due to the defects and omissions*. . . .

Because the burden to produce an alternative measure of damages was on the defendant who failed to meet that burden, proof of the cost of repairs alone was a sufficient basis on which to submit the question of damages to the jury. Therefore the decision of the trial court must be affirmed. . . .

*Nutzell v. Godwin*, No. 33, 1989 Tenn. App. LEXIS 485, at *2–3 (Tenn. Ct. App. July 13, 1989) (emphasis added).

In order for the "difference-in-value" measure to apply in this case, GSB, as the defendant to the Homeowners' counterclaim for breach of contract, had the burden of showing "the difference between the value of the defective structure and that of the structure if properly completed." *Edenfield*, 462 S.W.2d at 288. Our review of the record reveals that, at trial, GSB did not present any evidence regarding the value of the home if the repairs had been properly completed.

This brings us to a related sub-issue raised by GSB on appeal. GSB argues that the trial court erred in precluding Mr. Hess from testifying to the current value of his home based on an appraisal conducted on the home in the Fall of 2003. Mr. Hess did testify, without objection, that the Homeowners purchased the home for $285,000.00. When counsel for GSB asked Mr. Hess on cross-examination about the value of the home as stated in the appraisal, counsel for the Homeowners lodged a hearsay objection. When the trial court sustained the objection, counsel for GSB, despite the trial court's reference to an offer of proof, did not make such an offer and moved on to another line of questioning.

The Tennessee Rules of Evidence provide:

> (a) **Effect of Erroneous Ruling**. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> . . . .
>
> (2) *Offer of Proof*. In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context.

Tenn. R. Evid. 103 (2003). In addition, we are cognizant of the following:

> Generally in Tennessee, a trial court's ruling on the admissibility of evidence is within the sound discretion of the trial judge. Further, trial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, even if such evidence would be relevant. A trial court's evidentiary ruling will only be overturned on appeal upon a showing of abuse of discretion. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992) (citations omitted).

*Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001). "[S]ince this Court has no way of knowing what proof would have been introduced, the appellate review of the court's action is waived." *Memphis Bd. of Realtors v. Cohen*, 786 S.W.2d 951, 954 (Tenn. Ct. App. 1989) (citations omitted); *see also Dickey*, 63 S.W.3d at 723. Accordingly, since GSB failed to carry its burden to produce an alternative measure of damages, we must affirm the trial court's use of the "cost of repair" as the proper measure of damages in this case.

## B.

### Proving "Cost of Repair" Damages

The Homeowners, in an effort to prove the cost associated with repairing their home, relied on the testimony of two experts. The Homeowners offered the testimony of Donald Merritt ("Mr. Merritt"), a home inspector, to address the standard of care applicable to residential construction. In addition, the Homeowners offered the testimony of Eric Meyers ("Mr. Meyers"), a licensed Tennessee general contractor, to address the standard of care and actual cost associated with repairing their home. On appeal, GSB contends that the trial court erred in finding that these two witnesses qualified as experts and in admitting their testimony.

When reviewing a trial court's decisions regarding the admissibility of expert testimony, we are guided by the following:

> Questions regarding the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the broad discretion of the trial court. *See McDaniel*, 955 S.W.2d [257, 263–64 (Tenn. 1997)]; *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). On appellate review, the trial court's ruling shall not be overturned absent a finding that the trial court abused its discretion in admitting or excluding the expert testimony. *Ballard*, 855 S.W.2d at 562. "An appellate court should find an abuse of discretion when it appears that the trial court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

*State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002); *see also Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). "While the Trial Judge has broad powers of discretion in determining the qualifications of expert witnesses, those powers are not absolute." *Walters v. Glidwell*, 572 S.W.2d 657, 658 (Tenn. Ct. App. 1978). "The discretionary nature of the decision does not shield it completely from appellate review but does result in subjecting it to less rigorous appellate scrutiny." *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999). As our supreme court has stated:

> To give expert testimony, one must be particularly skilled, learned or experienced in a science, art, trade, business, profession or vocation. The expert must possess a thorough knowledge upon which he testifies that is not within the general knowledge and experience of the average person. *Kinley v. Tennessee State Mutual Insurance Co., Inc.*, 620 S.W.2d 79, 81 (Tenn. 1981). The trial judge has wide discretion in the matter of the qualifications of expert witnesses. *Blalock v. Claiborne*, 775 S.W.2d 363 (Tenn. App. 1989), citing *Stokes v. Leung*, 651 S.W.2d 704, 706 (Tenn. App. 1982).
>
> It is obvious that, however an "expert" may be defined, he should, in order to give his opinion as an expert, have some special as well as practical acquaintance with the immediate line of inquiry. Where that line between an expert and a non-expert should be drawn must, under the varying conditions of cases and their environments, necessarily be laid down by *judex feri*; and this court will not reverse on account of the judgment of the lower court as to whether a witness offered in it is an expert, unless we can clearly see that he was in error in respect to the qualifications of the witness, and that his error was

> injurious. *Benson v. Fowler*, 43 Tenn. App. 147, 306 S.W.2d 49, 63
> (Tenn. App. 1957), cert. denied 1957; citing *Powers v. McKenzie*, 90
> Tenn. 167, 181, 16 S.W. 559, 562 (1891).

*Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 443 (Tenn. 1992).

Mr. Merritt inspected the Homeowners' home in February of 2000, and he made follow-up visits three or four times thereafter. During these visits, Mr. Merritt visually inspected the home, took photographs, and issued a written report of his findings. Mr. Merritt found several aspects of the work performed by GSB's subcontractors to be below the applicable standard of care.

GSB objected to the introduction of Mr. Merritt's testimony at trial. In attempting to qualify Mr. Merritt as an expert, counsel for the Homeowners brought out the following facts during direct examination: Mr. Merritt has been a home inspector for the past seventeen years; he has a degree in mechanical engineering; he has inspected approximately 10,000 homes; he is a member of the Southern Building Conference, an organization which drafts building codes; he has been a member of the American Society of Home Inspectors ("ASHI") for the past sixteen years; in order to be certified by the ASHI, he passed a written test on ASHI standards in 1988 and two-hundred and fifty of his home inspections were reviewed by an ASHI committee; he is the president of his local chapter of the ASHI and teaches a continuing education course at the University of Memphis on ASHI standards; he has qualified as an expert on the standard of care in residential construction in Memphis and Shelby County in approximately fifty cases; during his seventeen years of experience, ninety-five percent of his inspections were of residential dwellings; he worked as a general contractor from 1968 until 1974 and built approximately twelve houses during that period; he served on the ASHI committee responsible for publishing the organization's "Standards of Practice and Code of Ethics"; and he served on a legislative committee for the Tennessee General Assembly responsible for drafting section 62-6-301 of the Tennessee Code, the home inspectors licensing statute.

On appeal, GSB points to several facts it brought out during voir dire of Mr. Merritt which it uses to illustrate that the trial court erred in admitting Mr. Merritt's expert testimony. Of the 10,000 homes Mr. Merritt inspected, ten percent were new construction (zero to four years old), four percent were remodeling projects, and the remainder were existing construction (over four years old). In its brief, GSB alleges that "under cross examination it was established by Appellant that [Mr. Merritt] held himself out with a license issued by the State of Tennessee to inspect homes such as the Appellee's home, but in fact his license only applied to homes from zero (0) to four (4) years in age." [2] Mr. Merritt does not possess any particular certifications in any general construction sub-

---

[2] The applicable licensing statute provides:

**Licensing or certification requirements**

(continued...)

field. Regarding the particular siding at issue, Mr. Merritt admitted that he only had three hours of training in wood siding. After reviewing the record, we cannot say that the trial court abused its discretion in finding that Mr. Merritt qualified as an expert and in admitting his testimony. All of the discrepancies raised by GSB on appeal go the credibility of Mr. Merritt's opinions. As such, we give great deference to a trial court's determinations regarding witness credibility when reviewing a case on appeal. *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991).

GSB also takes issue with the trial court's admission of the testimony of the Homeowners' second expert witness. Mr. Meyers began operating his own construction company in 1996. He became a licensed general contractor that same year, and he focuses his business primarily on home remodeling. Mr. Meyers testified that he has performed over 200 remodeling jobs and worked on over 500 homes throughout his career. As a general contractor, he estimates that he has overseen the construction of ten homes. In addition, he has developed over 200 quotes for remodeling jobs in the Shelby County area. GSB objected to introduction of Mr. Meyers' testimony at trial. Despite the objection, the trial court found that Mr. Meyers qualified as an expert on the standard of care and cost of repairs.

Mr. Meyers inspected the Homeowners' home in October 2002, and he concluded that GSB's performance was not in compliance with the appropriate standard of care. Mr. Meyers prepared a proposal in the amount of $137,717.45 for work to be done in repairing the Homeowners' home. On appeal, GSB primarily argues that the trial court erred in admitting Mr. Meyers' testimony because he has a financial interest in the litigation. When asked by counsel for GSB whether he had been paid for his services, Mr. Meyers testified that he hoped Mr. Hess would select him to do the repair work at the end of the litigation. As additional support for its position on appeal, GSB argues

---

[2](...continued)

> No person, firm or corporation shall offer to perform or perform *new inspection services* for a fee without having first obtained:
> (1) A contractor's license from the board;
> (2) Certification as a fire prevention or building official under § 68-120-113;
> (3) Certification by the Southern Building Code Congress International or any other national professional building code organization;
> (4) Certification by the American Society of Home Inspectors, Inc.;
> (5) Certification by the Home Inspectors of Tennessee Association, Inc. based on the association's standards in effect on May 1, 1997; *or* (6) *Membership in good standing with the American Society of Home Inspectors*.

Tenn. Code Ann. § 62-6-301 (2003) (emphasis added); *see also* Tenn. Code Ann. § 62-6-302 (2003) (defining "new inspection services"). Our review of the record does not lead us to draw the same inference argued by counsel for GSB; to wit, that Mr. Merritt does not have the proper licensing to evaluate a home similar in age to the Appellees' home. To the contrary, Mr. Merritt merely testified that the statute provides that anyone with a certification from the American Society of Home Inspectors can perform inspections permitted under the Tennessee Code. In addition, when asked by counsel for GSB if the cards he possessed indicated he was licensed by the State of Tennessee, he stated: "No, it says I'm a member of the American Society of Home Inspectors that is recognized by the State of Tennessee."

that Mr. Meyers also testified that he read an internet article on the particular siding at issue in the case and had only done a "handful of jobs" involving this particular siding.

Any financial interest Mr. Meyers possessed in the litigation is not grounds for reversing the trial court's determinations regarding the testimony of this witness. "[A] finder of fact may consider an expert's bias or financial interest in the litigation when determining the weight to be given to his or her opinions." *Street v. Levy, L.P.*, No. M2002-02170-COA-R3-CV, 2003 Tenn. App. LEXIS 552, at *12 n.5 (Tenn. Ct. App. Aug. 7, 2003). As stated previously, the additional facts alluded to by GSB regarding this witness go to issues relating to the weight and credibility to be given Mr. Meyers' testimony, and we give the trial court's determinations in that regard great deference on appeal. *See Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Accordingly, we find that the trial court did not abuse its discretion in admitting the testimony of Mr. Meyers.

## *C.*
### *Costs and Attorney's Fees*

The Homeowners contend that they are entitled to their costs and attorney's fees incurred in defending this appeal pursuant to section 27-1-122 of the Tennessee Code, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122 (2003). The Homeowners argue that this appeal is frivolous and taken solely for delay in the enforcement of the judgment entered by the trial court.

We must apply this statute strictly so that we do not discourage legitimate appeals. *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977). "An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001) (citing *Bursack v. Wilson*, 982 S.W.2d 341, 345 (Tenn. Ct. App. 1998); *Indus. Dev. Bd. v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995)). The award of damages for the filing of a frivolous appeal lies within the sound discretion of this Court. *Banks v. St. Francis Hosp.*, 697 S.W.2d 340, 341 (Tenn. 1985).

We note that an Appellant who fails to cite to any authority on appeal to support a reversal of a trial court's findings, especially when even cursory research would reveal the state of the law in this state, runs the risk of having his appeal deemed frivolous by this Court. *See Wells v. Sentry Ins. Co.*, 834 S.W.2d 935, 938 (Tenn. 1992). However, we find that this appeal is not so devoid of merit so as to warrant the award of damages under the statute. Accordingly, we deny the Appellees' request for damages under the statute.

### III.

#### CONCLUSION

For the reasons set forth herein, we affirm the trial court's judgment. Costs of this appeal are to be taxed to the Appellant, GSB Contractors, Inc., and its surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE