IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 20, 2014 Session

## MELISSA ANN HENDERSON v. RICHARD BARRY HENDERSON

**Appeal from the Circuit Court for Marion County**
**No. 19251     J. Curtis Smith, Judge**

_____

**No. M2013-01879-COA-R3-CV - Filed September 23, 2014**

_____

Husband and Wife were divorced after being married for over twenty years. The trial court awarded Wife alimony in futuro and divided the marital assets and debts. Husband appealed, contending the trial court erred in the amount and type of alimony it awarded Wife. Husband also asserted the trial court erred in its classification, valuation, and allocation of several items of marital property. We find the trial court erred only in its allocation of $3,900 worth of assets to Husband that the record reveals he does not own. Other than that slight modification to the trial court's allocation of assets, we affirm the trial court's judgment in all other respects. Wife is awarded one-half of the attorney fees she incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed except as Modified in Part**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

John P. Konvalinka and Jillyn M. O'Shaughnessy, Chattanooga, Tennessee, for the appellant, Richard Barry Henderson.

Kathryn R. Leiderman, Jasper, Tennessee, for the appellee, Melissa Ann Henderson.

**OPINION**

Melissa Ann Henderson ("Wife") and Richard Barry Henderson ("Husband") were married for over twenty-one years when they separated in early 2011. They have two children who are currently seventeen and nineteen years old. Wife filed a complaint for divorce in January 2011, alleging inappropriate marital conduct or, in the alternative,

irreconcilable differences. Husband filed an answer and counter-complaint seeking a divorce on the same grounds.

The case was tried over a period of four days in the summer and fall of 2012. The trial court filed a memorandum opinion and order on March 22, 2013, and then entered an amended memorandum opinion and order on July 18, 2013. In the amended opinion, the court awarded the parties a divorce based on irreconcilable differences. The court then classified, valued, and divided the parties' marital property, awarded Wife alimony in futuro, and designated Husband as the primary residential parent. Husband appeals, raising two issues. First, Husband contends the trial court erred in the type and amount of alimony it awarded Wife. Second, Husband contends the trial court erred in the designation, valuation, and allocation of certain items of the parties' property. Wife appeals no part of the amended order, but she seeks an award of the attorney fees she incurred as a result of Husband's appeal.

## I. ALIMONY

The evidence introduced at trial established that Wife graduated from high school in 1980 and took just a few college level courses. She attended hairdressing school and earned her cosmetology license in 1983. Wife has worked in her mother's beauty salon since 1983. She worked part-time at the children's school from approximately 2006 through 2010 and also worked part-time at a women's clothing store from 2009-2011, until her position was eliminated.

Husband obtained a Bachelor of Science degree in Agriculture from Middle Tennessee State University in 1978. He has been able to continue his education through courses provided by the Tennessee Valley Authority ("TVA") and the United States Department of Agriculture-Natural Resources Conservation Services. Husband is a certified professional soil scientist and a registered professional environmental specialist with the National Environmental Health Association. He is licensed as a soil consultant in Tennessee, Georgia, and Alabama.

During the parties' marriage, Husband initially worked as an environmentalist for the Hamilton County Health Department, where he was employed until May 2003. Husband was hired by the TVA to work as an Assistant Unit Operator in November 2004, and he was still employed in that capacity at the time of trial. In addition to his job with the TVA, Husband started his own soil consulting business in 1990.

Wife's income has always been much lower than Husband's income, and Wife has been dependent on Husband for financial support throughout the parties' marriage. Husband

provided the majority of the financial support for the family throughout the marriage, even when his earnings were lower in earlier years. Wife testified at trial that she earns an average of $650 per month working at her mother's salon. She has looked for jobs at other salons in the area where she lives, but she has not been able to find a position elsewhere.

Husband earned over $109,000 from his job at TVA in 2011. At the time of trial, Husband was on track to earn at least $99,000 for the 2012 year, which does not include the annual bonus he normally receives in December of each year. In addition to his income from TVA, Husband has earned varying amounts from his soil consulting business. The trial court found that Husband's "income potential" as a soil consultant was $25,000 per year. Husband does not contest this finding.

Wife testified and produced documentary evidence showing her monthly expenses approximate $3,100. Based on her average monthly income of $650, Wife's expenses exceed her income by about $2,450. Husband, on the other hand, had a gross monthly income of $9,216 at the time of trial. His income and expense statement shows his expenses exceed his income by $109. Father included the children's expenses in his overall expenses. Husband's testimony revealed, however, that he accounted for some expenses more than once. In addition, the parties' children have attended private school since kindergarten, and the elder child was expected to graduate in the spring of 2013. Husband included a monthly expense of $1,500 for the children's tuition. The evidence showed Husband's expenses will be reduced by $750 per month going forward with only one child still attending private school.

In addition to evidence of the parties' incomes and expenses, Wife testified that she has some health issues that affect her ability to work. As the result of a fall at McDonald's in 2010, Wife suffered a compression fracture and had to undergo lumbar surgery. Her mobility has been compromised as a result of the fall. Wife testified that she has had physical therapy, but she still suffers pain and has to lie down when the pain becomes too severe. In addition, Wife testified that she has arthritis in her hands and feet.

Husband contends the court should have awarded Wife rehabilitative or transitional alimony and that the award should be reduced to $750 per month. Husband asserts Wife has the capacity to earn more than she currently earns and that her expenses are minimal. Husband also contends he does not have the ability to pay Wife more than $750 per month.

The Court of Appeals reviews the trial court's findings of fact de novo, according the trial court a presumption of correctness, unless the preponderance of the evidence convinces the Court otherwise. Tenn. R. App. P. 13(d); *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 515 (Tenn. 2012). The trial court has wide discretion in determining the type, amount, and duration of alimony to award. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

This determination is "factually driven and involves the careful balancing of many factors." *Id.* (footnote omitted). Appellate courts will not interfere with or alter the trial court's exercise of that discretion absent an abuse of discretion. *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *Riggs v. Riggs*, 250 S.W.3d 453, 456-57 (Tenn. Ct. App. 2007); *Sullivan v. Sullivan*, 107 S.W.3d 507, 511 (Tenn. Ct. App. 2002).

"'The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable.'" *Gonsewski*, 350 S.W.3d at 105 (quoting *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006)). To show the trial court abused its discretion, Husband is required to show the court applied the wrong legal standard, arrived at a decision that is not logical, resolved the case on a clearly erroneous assessment of the evidence, or used reasoning that caused Husband to suffer an injustice. *Gonsewski*, 350 S.W.3d at 105; *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). The appellate court is not permitted to substitute its judgment for that of the trial court when reviewing the trial court's judgment for an abuse of discretion. *Gonsewski*, 350 S.W.3d at 105; *Eldridge*, 42 S.W.3d at 85.

Tennessee recognizes four different types of alimony, or spousal support: rehabilitative alimony, alimony in futuro, alimony in solido, and transitional alimony. Tenn. Code Ann. § 36-5-121 (Supp. 2013). There is a statutory preference for rehabilitative or transitional alimony, Tenn. Code Ann. § 36-5-121(d)(2), but "[t]his statutory preference does not entirely displace the other forms of spousal support when the facts of the case warrant long-term or more open-ended support." *Gillespie v. Gillespie*, No. E2006-00734-R3-CV, 2006 WL 3732195, at *3 (Tenn. Ct. App. Dec. 19, 2006) (citing *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995)).

Tennessee Code Annotated section 36-5-121(i) sets forth factors the trial court is to consider when determining whether to award spousal support, and if so, the type and amount to award. These factors include the following:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

4

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The trial court considered each of these factors in determining whether to award Wife spousal support, and if so, which type. The court correctly noted that the two most important factors are the disadvantaged spouse's need for the support and the obligor spouse's ability to pay. *See Riggs*, 250 S.W.3d at 457; *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002). The factor that weighed most heavily in Wife's favor was number one, the relative earning capacity, needs, and financial resources of each party. The court wrote, "Husband's earning capacity and financial resources substantially exceed those of Wife. Wife's financial needs are great as a result of her very limited earning capacity."

After discussing the different types of alimony, the court awarded Wife alimony in

futuro in the amount of $2,100 per month. The court explained:

> Wife's financial needs are great; and Husband has the ability to pay a sufficient amount of support to Wife. The Court further finds Wife cannot be rehabilitated, or able to achieve an earning capacity that will permit her [to attain the] standard of living enjoyed during the marriage, or to the Husband's expected post-divorce standard of living.

Alimony in futuro is appropriate when the disadvantaged spouse cannot feasibly be economically rehabilitated and long-term support is necessary. *Sullivan*, 107 S.W.3d at 511. The trial court noted that Wife contributed as a homemaker and care-taker of the parties' children, and this enabled Husband to work longer hours and continue his education and training throughout the marriage. Wife was fifty years old at the time of trial. Although Wife has worked throughout the parties' marriage, she has earned just a fraction of the amount Husband earned. Through no fault of her own, Wife has health issues that affect her mobility and require her to lie down for periods of time. Husband acknowledges that Wife's expenses are modest and does not contest any of her itemized expenses.

Husband's assertion that he cannot afford the amount of alimony the trial court awarded is belied by the evidence. Husband testified that his income was sufficient to support the family throughout the parties' marriage, and his salary has increased as he has gained seniority in his job. Husband's expense of paying private school tuition should be only half what it was when both children were in school, and the younger child should graduate in the next year or so. At that time, Husband's expenses will decrease even further.

Our review of the record convinces us that the evidence does not preponderate against the trial court's findings. Husband has failed to establish that the trial court abused its discretion in awarding Wife alimony in futuro in the amount of $2,100 per month. Accordingly, we affirm the trial court's award of this support.

## II. MARITAL PROPERTY

In all actions for divorce, upon the parties' request, the trial court equitably divides, distributes, or assigns the marital property between the parties. Tenn. Code Ann. § 36-4-121(a)(1) (Supp. 2014). "Marital property" is defined as:

> all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . .

6

Tenn. Code Ann. § 36-4-121(b)(1)(A).

The trial court divided over $600,000 in marital assets between the parties. Wife was awarded assets valued at $331,238.15, and Husband was awarded assets valued at $294,132.09. Husband contends the court erred in the classification, valuation, and division of particular assets. We will address each of Husband's claims, *seriatim*.

A. Husband's Pension Plan

The first error Husband contends the trial court made was in assigning a value to his Tennessee Consolidated Retirement System Pension Plan ("TCRSPP"). The court valued this asset at $112,524 based on expert testimony offered by a certified public accountant ("CPA"). Husband's defined monthly benefit was fixed at $501 as of the trial date, which value neither party disputes. Wife retained the CPA to calculate the present value of the TCRSPP. The CPA testified that he used a 2.3 percent interest rate to calculate the present value because 2.3 percent is an annual interest rate that is considered conservative, or risk-free. The CPA explained that 2.3 percent was the current market yield of United States Treasury securities at a twenty-year constant maturity. The CPA explained further:

> When I perform a present value calculation, I try to equate the lump sum at a certain date, this being August 3, 2012, that would equate to a future stream of cash flows, in this case $501 per month. Well, the only way to equate those is to use a certain interest rate that you are going to be able to get. The only way you would take a lump sum now as opposed to in future payments in general would be if you can invest that money now to equate to the same future payments or better.
>
> Using a conservative . . . treasury rate of 2.3 percent is -- you know, that is a guaranteed rate. That is something that's published by the U.S. Government on a 20-year constant maturity treasury bond. And anything other than that would have a risk factor, such as a bond, a corporate bond that has a risk of default in there and that sort of thing. So there was not -- from my professional judgment, the 2.3 percent for the current market yield on the United States Treasury was the most accurate.

Husband asserts the TCRSPP should not have been valued at more than $84,000. According to Husband, this lower value would be attained if a higher interest rate were used to calculate the present value of the TCRSPP. Husband sought to introduce into evidence a document he identified as the Tennessee Consolidated Retirement System Comprehensive Annual Financial Report for the fiscal year ending June 30, 2011 (the "financial report"), for

7

the purpose of impugning the interest rate the CPA selected. According to Husband, the financial report showed the historical rate of return of the portfolio of funds in which the TCRSPP was invested, which was higher than the 2.3 percent interest rate the CPA used to calculate the present value. However, as the CPA explained during cross-examination, Husband was entitled to receive $501 per month regardless of the portfolio's overall performance. Because Husband's monthly TCRSPP payments would not fluctuate based on the portfolio's rate of return, the CPA did not deem the portfolio's internal rate of return to be relevant to the present value calculation of Husband's TCRSPP.

We understand Husband to be making two arguments with respect to his TCRSPP. First, Husband contends the court erred in refusing to admit the financial report into evidence. Second, Husband contends the court assigned an improper value to his TCRSPP. We turn first to Husband's argument about the admissibility of the financial report. Trial courts have wide discretion to admit or exclude evidence during a trial, and we review a trial court's evidentiary rulings under an abuse of discretion standard of review. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992); *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 544 (Tenn. Ct. App. 2005).

During the trial, Husband argued that the financial report was admissible as a self-authenticating document under Rule 902 of the Tennessee Rules of Evidence. That rule states that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required" for particular types of documents. TENN. R. EVID. 902. Without determining whether the financial report qualified as one of the described documents, however, the court noted that the rule requires "[a] party intending to offer a record into evidence under this paragraph [to] provide written notice of that intention to all adverse parties" before offering the document into evidence. *Id*. Husband acknowledged that he did not provide such notice to Wife.

Husband then argued the financial report was admissible as a public record under Rule 1005 of the Tennessee Rules of Evidence. Rule 1005 provides:

> The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible may be proved by copy certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.

The court noted that Rule 1005 refers back to Rule 902 and rejected Husband's attempt to

introduce the financial report under Rule 1005 for the same reason it rejected Husband's attempt to introduce the report under Rule 902.[1]

On appeal, Husband argues that the trial court erred by failing to admit the financial report into evidence as a public records exception to the hearsay rule pursuant to Rule 803 of the Tennessee Rules of Evidence. Husband did not attempt to introduce the financial report as an exception to the hearsay rule under Rule 803 at trial, however, and he is precluded from making this argument for the first time on appeal. *See Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 355 (Tenn. Ct. App. 2009) (holding that issue not raised at trial cannot be raised for the first time on appeal). We conclude the trial court did not abuse its discretion in refusing to admit the financial report into evidence.

We turn now to the value the trial court assigned to Husband's TCRSPP. A trial court's valuations of divorcing parties' assets constitute decisions of fact. *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007); *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). These decisions "are entitled to great weight on appeal, and will not be second-guessed unless they are not supported by a preponderance of the evidence." *Woodward*, 240 S.W.3d at 828; *see Ray v. Ray*, 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995) (stating that trial court's valuation of marital property entitled to presumption of correctness). When the parties present conflicting evidence of an asset's value, "the court may place a value on the property that is within the range of the values represented by all the relevant valuation evidence." *Woodward*, 240 S.W.3d at 828; *see Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997) (indicating that trial court may value marital property within range of evidence parties submit at trial).

The trial court adopted the CPA's valuation of Husband's TCRSPP. Husband cross-examined the CPA in an effort to discredit the 2.3 percent interest rate the CPA used to arrive at his present value of the TCRSPP, but Husband did not offer a competing expert or other witness suggesting an alternative value for this asset. The method used to determine an asset's value "remains within the sound discretion of the trial court to determine after consideration of all relevant factors and circumstances." *Cohen v. Cohen*, 937 S.W.2d 823, 831 (Tenn. 1996). We are convinced, upon our review of the record, that the evidence does not preponderate against the trial court's finding that, as of the time of trial, the present value

---

[1]Husband also contends that after the day on which he attempted to introduce the financial report, but before a subsequent hearing date, he provided Wife notice that he intended to use the financial report, as required by Rule 902. He claims the trial court erred by failing to rule on the document's admissibility after he provided this notice to Wife. Husband cannot satisfy the requirements of Rule 902 after the fact, however. Rule 902 requires a party to make the document available for inspection *before* it is offered into evidence, which Husband did not do.

of Husband's TCRSPP was $112,524.[2]

B. Wife's Personal Injury Settlement

Wife testified that in 2010 she suffered a fall at McDonald's and filed a lawsuit to recover her damages. Wife settled her claims for $66,000. After paying attorney fees and medical expenses, Wife's net proceeds from the settlement were $27,635.84. The trial court classified the settlement proceeds as Wife's separate property. The court explained:

> Marital property includes "recovery in personal . . . actions for the following: wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damages to marital property." Wife testified as to her pain and suffering as a result of the back injury and how it now affects her ability to work. There was no proof of any amount of lost wages during the marriage as a result of the back injury or reimbursement for medical bills incurred and paid with marital property or property damage to marital property. . . . Some of the medical bills were paid by BlueCross BlueShield and some were paid from the settlement proceeds.
>
> Wife testified that she used a portion of the settlement proceeds for necessary household and living expenses after the 2011 income tax was depleted. Although Wife did not re-take the stand to testify as to the exact amount of those funds that she was required to use for her support the Court finds based on all the proof that Wife used the funds at the approximate rate of $2,500.00 per month. The balance of those settlement funds are now approximately $19,000.00 and constitutes Wife's separate property.

As the trial court noted, "marital property" is defined to include recoveries in personal injury actions for "wages lost during the marriage, reimbursement for medical bills incurred and paid with marital property, and property damage to marital property." Tenn. Code Ann. § 36-4-121(b)(1)(C) (Supp. 2014). "Separate property," in contrast, is defined to include pain and suffering awards. Tenn. Code Ann. § 36-4-121(b)(2)(E). The record supports the trial court's statement that Wife testified she continues to suffer back pain as a result of her

_____

[2]Husband also asserts that as of the time of trial, he had worked for the State of Tennessee for fifteen years, but that he did not get married until one year after he began working for the State. Husband contends the court should have deducted 1/15th from its valuation of his TCRSPP to determine the value of the marital property portion of this asset because this fraction was earned when he was not yet married. The record shows, however, that the monthly benefit the CPA relied on to determine the present value of Husband's TCRSPP took this into consideration and assumed a service credit beginning on the date of the parties' marriage, rather than the date Husband began working for the State.

fall at McDonald's. The record further supports the trial court's finding that no evidence was presented that Wife lost any wages as a result of her back injury. Further, no evidence was presented that marital funds were used to pay any medical bills Wife incurred as a result of her fall at McDonald's or that there was any damage to any marital property as a result of her injury.

Husband relies on the case *Lane v. Lane*, E2011-02293-COA-R3-CV, 2012 WL 3030579 (Tenn. Ct. App. July 26, 2012), to argue the proceeds from the McDonald's settlement should be classified as marital property. The husband in *Lane* suffered a workplace injury and received worker's compensation benefits for five months. *Id*. at *1. The husband and wife then filed a products liability claim, based on the injury the husband suffered, and received a lump sum settlement. *Id.* The settlement check was made payable to both individuals without specifying the portion allotted to each party. *Id.* at *5. The trial court classified the settlement as marital property, and the husband challenged this classification, arguing it should have been classified as his separate property. *Id.* at *4.

The Court of Appeals affirmed the trial court's classification, stating:

> We hold that the settlement check represented the amount sought by both parties and ultimately awarded to both parties in fulfillment of each of their products liability claims. Accordingly, we conclude that the products liability settlement was properly classified as marital property and reject Husband's contention that the settlement check was not marital property because it did not specifically include recovery for lost wages pursuant to Tennessee Code Annotated section 36-4-121(b)(1)(C).

*Id*. at *5.

Husband incorrectly suggests that the *Lane* case stands for the proposition that tort action settlements should generally be classified as marital property if the settlement is reached during the parties' marriage. Husband glosses over the fact that both the husband and wife in *Lane* were plaintiffs in the products liability lawsuit and that the settlement check was made payable to both parties. In this case, by contrast, Wife was the sole plaintiff in the lawsuit filed against McDonald's, and no evidence was presented that Husband was entitled to any of the settlement proceeds.

In the absence of evidence suggesting the settlement proceeds compensated Wife for lost wages during the parties' marriage, and in light of Wife's testimony about the pain and suffering she has experienced and continues to experience as a result of her fall, we conclude

the evidence does not preponderate against the trial court's classification of the McDonald's settlement as Wife's separate property.

### C. Husband's Debt to his Parents

The evidence at trial showed that Husband's parents loaned him money on several occasions in 2011 and 2012, after the parties had separated, but before they were divorced. The total amount Husband borrowed was $29,441. Husband testified that he used the money to help pay for the children's private school tuition, a family evaluation, and additional expenses incurred as a result of having two separate homes. Husband took the position at trial that these loans from his parents should be classified as marital debt because the loans were incurred during the parties' marriage for the benefit of the entire family.

The trial court denied Husband's request, stating:

Both Husband and Wife testified Husband's income was always sufficient to support the family throughout the marriage. When the parties separated in January 2011, Husband moved into his parents' home and had no additional living expenses until he moved into a rental house in March and began paying $700.00 per month rent. He had stopped paying Wife's household expenses by March of 2012. In light of Husband's substantial income and generous spending habits the Court does not find credible Husband's explanation of financial difficulties necessitating loans from his parents. Husband did not list attorney's fees as an expense and which also lessens his credibility on the issue of his expenses. The Court does not make any allowance for these alleged debts in the division of the parties' property and debt.

The classification of property as a marital asset or debt constitutes a question of fact, and the trial court has broad discretion in classifying an asset or debt as marital or separate property. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135-36 (Tenn. Ct. App. 2005); *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998); *see Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003) (explaining that marital debts are subject to equitable division in the same way as marital assets); *Owens v. Owens*, 241 S.W.3d 479, 490 (Tenn. Ct. App. 2007) (stating that division of marital estate includes division of marital property and allocation of marital debt). "On appeal, the trial court's decision on such matters is entitled to great weight, and absent an error of law, the trial court's classification of property will be reversed or modified only if the evidence preponderates against the court's decision." *Bilyeu*, 196 S.W.3d at 136. The trial court is in the best position to determine a witness's credibility. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Thus, we will not reevaluate a trial court's assessment of a witness's credibility in the absence of clear and convincing contrary

evidence. *Id*.

Husband contends that because the loans benefited the family and were incurred during the parties' marriage, the trial court should have classified them as marital debts. As the trial court noted, however, Husband did not explain at trial why his expenses increased after he moved out of the marital home to justify the loans from his parents. Evidence was presented that Husband's income had always been sufficient in the past to cover the family's expenses and that Husband's salary increased steadily year after year. This evidence, taken together with the court's finding that Husband was not credible on this issue, leads us to conclude that the evidence does not preponderate against the trial court's determination that Husband's debt to his parents should not be classified as marital debt.

D. Assorted Other Assets

Husband contends the trial court erred in its division of two investment accounts, one with Managers Investment Group and the other with Harbor Funds. At the time of trial, the Managers Investment account was valued at $5,972 and the Harbors Fund was valued at $7,422. The trial court assigned the Harbors Fund account to Husband and the Managers Investment account to Wife. Husband asserts these funds were established by his parents for the benefit of the parties' children and that Husband should have been named the custodian of both accounts.

The trial court is directed to divide the parties' marital property equitably. Tenn. Code Ann. § 36-4-121(a)(1). This does not mean, however, that the division must be equal as between Husband and Wife. "A division of marital property is not rendered inequitable simply because it is not precisely equal, or because each party did not receive a share of every piece of marital property." *Owens*, 241 S.W.3d at 490 (internal citations omitted); *see* Tenn. Code Ann. § 36-4-121(c)(1)-(11) (list of factors court is to consider in making equitable division of marital property). Trial courts have wide discretion in equitably dividing the marital property, and appellate courts "'are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures.'" *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010) (quoting *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007)); *see Owens*, 241 S.W.3d at 490 ("[I]t is not our role to tweak the manner in which a trial court has divided the marital property.").

Statements from each account were marked as exhibits at trial, and the statements do not indicate that either account is a custodial account. Both accounts are in the names of Husband and Wife as joint tenants with rights of survivorship. The account records do not indicate the source or purpose of the funds. Husband has failed to establish that the trial

13

court abused its discretion in awarding one account to Husband and the other account to Wife. We affirm the trial court's division of these two assets.

Husband next takes issue with the trial court's decision assigning particular items of personal property to Husband that Husband asserts do not belong to him. The items about which Husband complains include an iPad as well as a stove, refrigerator, and washer and dryer that are located in Husband's rental home. Husband testified that the appliances belong to his landlord rather than to Husband, and Wife did not present any evidence to contradict this testimony. With regard to the iPad, Husband testified that he purchased an iPad for his nephew at a price of $600 on behalf of his sister and that she paid him back for this purchase. The total value of these items of personal property is $3,900.

After reviewing the transcript, we conclude Husband is correct with respect to these items of personal property and that the evidence preponderates against the trial court's decision to assign these items to Husband. Accordingly, we modify the trial court's judgment to delete these items from the list of marital assets assigned to Husband. Contrary to Husband's argument, however, this adjustment does not necessitate a new overall distribution of marital assets because it does not render the division of marital assets inequitable.

Our adjustment of the assets assigned to each party reduces the total assets awarded to Husband from $296,583.88 down to $292,683.88. The sum of marital assets awarded to Wife totaled $335,238.15. The court awarded Wife more debt than it awarded Husband, however, with the result that the net amount of marital assets awarded to Wife was $331,238.15. Taking today's adjustment to Husband's assets into account, the net amount of marital assets awarded to Husband totaled $290,232.09.

Husband complains that Wife was awarded six percent more of the marital assets than Husband received and that, therefore, the trial court's division of marital assets was not equitable. We disagree. Included among the factors the courts are to consider in making an equitable division of marital property are the parties' physical health, employability, and earning capacity; the relative ability of each party for future acquisitions of capital assets and income; and the economic circumstances of each party when the division of property is to become effective. Tenn. Code Ann. § 36-4-121(c)(2), (4), (8). The trial court thoroughly considered each of the factors set out in Tenn. Code Ann. § 36-4-121(c) in an effort to reach a fair and equitable distribution of the parties' marital assets. The trial court's distribution, as modified herein, neither lacks proper evidentiary support nor results in an error of law or misapplication of statutory requirements and procedures.

We affirm the trial court's distribution of marital assets and debts, except that

14

Husband's assets will be reduced by $3,900 to account for the iPad and rental home appliances that were improperly assigned to him.

### III. WIFE'S ATTORNEY FEES

Wife relies on Tenn. Code Ann. § 36-5-103(c) in seeking an award of her attorney fees incurred on appeal. Section 36-5-103(c) provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

This statute authorizes the award of attorney fees incurred at trial as well as on appeal, and courts have discretion to award these fees. *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001); *Deas v. Deas*, 774 S.W.2d 167, 170 (Tenn. 1989). The Court of Appeals has explored the application of this statute to cases where one former spouse is required to defend the other former spouse's attempt to reduce or eliminate the amount of alimony awarded by the trial court. *Evans v. Evans*, M2002-02947-COA-R3-CV, 2004 WL 1882586, at *13-14 (Tenn. Ct. App. Aug. 23, 2004). Concluding that the statute authorized the award of attorney fees in this situation, the *Evans* court wrote:

> There is no justification in the language of the statute itself for treating enforcement of alimony orders differently from enforcement of child support orders. . . . Alimony is only awarded in the first instance to an economically disadvantaged spouse who has a demonstrated need for the support. Absent a showing in a modification proceeding that the need no longer exists, requiring the recipient to expend that support for legal fees incurred in defending it would defeat the purpose and public policy underlying the statute on spousal support. Additionally, the possibility of being burdened with a former spouse's attorney's fees helps deter unwarranted or unjustified attempts by an obligor to evade or reduce an existing support obligation.

*Id.* at *13 (footnote omitted). Thus, the *Evans* court concluded, "Tenn. Code Ann. § 36-5-103(c) authorizes a court to award attorney's fees to an alimony recipient who is forced to

15

defend an action to reduce or terminate that alimony." *Id.*

If alimony were the only issue Husband raised on appeal, we would award Wife all of the reasonable attorney fees she incurred on appeal. However, Husband also raised issues regarding the valuation, classification, and allocation of the parties' property. Wife is not entitled to an award of the fees she incurred in defending these other issues. Husband devoted one-half of his opening brief and all of his reply brief to his argument that the trial court erred in awarding Wife alimony in futuro in the amount of $2,100 per month. Accordingly, we award Wife one-half of the reasonable attorney fees she incurred on appeal. We remand the case to the trial court to determine the amount of reasonable attorney fees Wife incurred in this appeal.

## IV. CONCLUSION

We modify the trial court's judgment by reducing Husband's marital assets by $3,900 to account for the appliances and iPad erroneously assigned to him. The trial court's judgment is affirmed in all other respects. Wife is awarded one-half of the reasonable attorney fees she incurred on appeal. The case is remanded for such further proceedings as may be required, consistent with this Opinion. Costs of this appeal shall be assessed against the appellant, Richard Barry Henderson, for which execution shall issue, if necessary.

_____
ANDY D. BENNETT, JUDGE