IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 7, 2016

## PATRICIA HARPER v. ERIC DIXON ET AL.

**Appeal from the Circuit Court for Sevier County**
**No. 13-CV-451-IV      O. Duane Slone, Judge**

_____

**No. E2015-00411-COA-R3-CV-FILED-MAY 16, 2016**

_____

This is a breach of contract action involving a residential kitchen remodeling project. The plaintiff homeowner filed a complaint against the defendant contractor and his construction company, alleging that the contractor had breached the parties' contract by failing to complete the project and walking off the job. The contractor filed a counter-complaint, alleging, *inter alia*, that the homeowner owed the construction company funds for work completed and reimbursement of material costs. Following a bench trial, the trial court dismissed the individual contractor as a party but found that the construction company had materially breached the contract. Setting off the amount the homeowner owed contractually from the damages determined, the court awarded a judgment to the homeowner in the amount of $3,555.40. The homeowner appeals the amount of the damages award and the set-off. She further appeals the trial court's denial of her oral motion to allow her substitution as party plaintiff in the capacity of trustee for her son, to whom she had conveyed her interest in the home in trust. Having determined that the trial court made two mathematical errors in calculating the final award to the homeowner, we modify the award to $4,055.40. We affirm the judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Steven E. Marshall, Sevierville, Tennessee, for the appellant, Patricia Harper.

Bryan E. Delius and Bryce W. McKenzie, Sevierville, Tennessee, for the appellee, Eric Dixon Construction, LLC.

1

**OPINION**

I. Factual and Procedural Background

On January 10, 2013, the plaintiff, Patricia Harper DeArmond, entered into a written contract with the defendant construction company, Eric Dixon Construction, LLC, ("Dixon Construction"), represented by co-defendant Eric Dixon. Ms. Harper[1] agreed to pay a total of $12,000.00 in return for Dixon Construction's remodeling the kitchen in Ms. Harper's residence ("Remodeling Project"), located at 305 Evergreen Drive in Sevierville, Tennessee ("the Property"). Mr. Dixon previously had constructed houses working with Ms. Harper's husband, David DeArmond, who had also worked as a contractor. Dixon Construction had performed limited work for Ms. Harper in the past.

The contract, admitted as an exhibit at trial, specifically provides in pertinent part:

> This contract is for the remodel of kitchen flooring removal and reinstallation labor (approx. 310sq.ft.), removal of existing kitchen cabinets and reinstallation labor of new cabinets, the removal of 23'lx8'h existing frame wall and installation of new beam and support post in place of existing wall, the reworking of existing plumbing in slab floor for island sink and new kitchen sink, the framing of a false ceiling in the new [addition] of kitchen already existing (approx. 23'x8'), [i]nstallation of 3'x6'8" door thru existing frame wall between new [addition] and pantry, the wiring of 3 electrical circuits for new kitchen receptacles, stove, and lights, also the labor of leveling the floor in new [addition] back to older existing kitchen floor. Materials furnished by Contractor will consist of framing material for beam, support, false ceiling framing, wiring for 3 electric circuits and rough-in boxes for switches and receptacles. [T]he rest of materials to be furnished by Patricia Ann Harper De[A]rmond. The cost of the contract is to be twelve thousand dollars ($12,000.00), to be paid as follows, three thousand dollars ($3,000.00) to be paid up front, five thousand dollars ($5,000.00) to be paid after cabinets, flooring, wall has been removed and beam and new false ceiling framing installed, three thousand dollars ($3,000.00) to be paid after new tile flooring existing of 16"x16" porcelian [sic] tiles is installed, and the remaining one thousand dollars ($1,000.00) is to be paid after cabinet installation. Contractor agrees to set formica kitchen tops only, all others will be responsibility of

---

[1] Ms. Harper executed the contract using her full married name of Patricia Ann Harper DeArmond. Although she is referred to alternatively as Ms. Harper and Ms. DeArmond throughout the record, in keeping with the style of the case, we will refer to the plaintiff as "Ms. Harper" throughout this opinion.

Patricia Ann Harper De[A]rmond. In the case of collections all fees and charges will be paid by Patricia Ann Harper De[A]rmond.

Approximately one week following execution of the contract, Dixon Construction began work on the Remodeling Project. The parties subsequently executed two addendums to the contract, both dated March 21, 2013. The first addendum required Dixon Construction to add five electrical circuits to the kitchen in return for an additional $1,800.00. The second addendum required Dixon Construction to add two ceiling light boxes, hang two ceiling tiles, and rework the kitchen sink base to accommodate a farm sink for an additional $625.00. The cost of the contract with addendums totaled $14,425.00. It is undisputed that Ms. Harper made the first three payments in respective amounts of $3,000.00; $5,000.00; and $3,000.00 as contracted, for a total amount paid to Dixon Construction of $11,000.00. She did not pay Dixon Construction the final $1,000.00 provided in the original contract; the $1,800.00 provided in the first addendum; or the $625.00 provided in the second addendum. The total unpaid balance was $3,425.00.

Dixon Construction continued work on the Remodeling Project until a disagreement over modification of an oven cabinet and placement of a microwave in the cabinet led to an altercation between Mr. Dixon and Mr. DeArmond.[2] A photograph admitted into evidence at trial demonstrates that the microwave placement in the oven cabinet was above Ms. Harper's head, and it was undisputed at trial that such placement was unsafe. Although Mr. Dixon testified that Ms. Harper had insisted on the modification because she did not want to wait for shipment of an oven cabinet with the proper specifications, Ms. Harper testified that she never approved the placement of the microwave. Ms. Harper stated that when she confronted Mr. Dixon, asserting that the microwave placement "had to be redone," Mr. Dixon became angry and struck Mr. DeArmond. Ms. Harper further testified that she felt threatened during the altercation and ordered Mr. Dixon off the Property. Mr. Dixon did not deny that he had struck Mr. DeArmond. Mr. Dixon's testimony corroborated that Ms. Harper had ordered him to leave the Property.

Mr. Dixon testified that Dixon Construction had substantially completed the Project except for the installation of a 3'x6'8" door through the existing frame wall between the new addition and the pantry. Ms. Harper, however, maintained that several elements of the Project remained unfinished.

On April 29, 2013, Dixon Construction filed an action in the Sevier County General Sessions Court against Ms. Harper, alleging breach of contract and requesting

---

[2] The record is silent as to the date of the altercation or the date that Dixon Construction's work on the Project stopped.

damages in the amount of $3,425.00 plus attorney's fees and costs. On July 24, 2013, Ms. Harper filed a complaint in the Sevier County Circuit Court against Mr. Dixon individually and Dixon Construction, alleging breach of contract. Delineating twenty-eight examples of allegedly defective or incomplete construction or installation, Ms. Harper averred that Mr. Dixon and Dixon Construction had abandoned the Remodeling Project with the construction unfinished. Ms. Harper claimed $100,000.00 in damages, including the cost of remodeling completion, cost of repairs to defective construction, and her loss of the home's use during construction. On August 27, 2013, the General Sessions Court entered an order consolidating the two actions into one action to be heard by the Circuit Court ("trial court").

Mr. Dixon and Dixon Construction subsequently filed an answer on October 11, 2013, denying all substantive allegations and asserting affirmative defenses of failure to state a claim upon which relief could be granted, impossibility of performance due to Ms. Harper's breach of contract, and unjust enrichment. They concomitantly filed a counter-complaint, alleging that Ms. Harper had not paid the last installment payment due on the contract, had not reimbursed Dixon Construction for materials purchased to complete work, and had caused her own damages by breaching the contract first. Mr. Dixon and Dixon Construction requested a judgment in the amount of $15,000.00, including payment allegedly past due, unreimbursed expenses, court costs, and attorney's fees. On the same day, Mr. Dixon and Dixon Construction also filed a motion to dismiss for failure to state a claim upon which relief could be granted, pursuant to Tennessee Rule of Civil Procedure 12.02(6), or, in the alternative, a motion "for More Definite Statement," averring that Ms. Harper had failed to attach a copy of the contract as an exhibit to her complaint, pursuant to Tennessee Rule of Civil Procedure 10.03.

On April 29, 2014, Mr. Dixon and Dixon Construction filed a motion for default judgment, pursuant to Tennessee Rule of Civil Procedure 55, averring that Ms. Harper had failed to file a timely answer to the counter-complaint. Ms. Harper subsequently filed an answer to the counter-complaint on May 13, 2014, denying all substantive allegations and asserting the affirmative defenses of failure to state a claim upon which relief could be granted and failure to file a copy of the contract with the counter-complaint. Ms. Harper also averred that Mr. Dixon and Dixon Construction were not entitled to recover damages because the work performed had fallen below the "applicable standard for remodeling construction in Sevier County, Tennessee." Ms. Harper concomitantly filed a copy of the parties' contract.

On June 12, 2014, the trial court entered an order denying Mr. Dixon's and Dixon Construction's motion to dismiss and motion for default judgment. The court set the matter for trial on September 23, 2014. Prior to trial, Ms. Harper filed reports authored by a structural engineer and a home inspector, as well as an estimate of repair costs

generated by another contractor. The structural engineer, home inspector, and contractor each subsequently testified at trial. Mr. Dixon and Dixon Construction filed a motion to dismiss Mr. Dixon as an individual defendant on September 8, 2014, averring that Ms. Harper had failed to allege any wrongful acts committed by Mr. Dixon individually. Ms. Harper filed a response, objecting to the motion, on December 11, 2014.

Following a bench trial conducted on November 17 and 18, 2014, the trial court dismissed Mr. Dixon as an individual party but found, *inter alia*, that Dixon Construction had "substantially and materially breached the terms and conditions of the contract." The court calculated the damages due to Ms. Harper as the total amount due to repair the kitchen in the amount of $7,380.40. As to Dixon Construction's counter-complaint, the court found that Ms. Harper owed Dixon Construction a total of $3,425.00. Setting off the damages awarded to Ms. Harper by the amount she owed by contract, the court thereby awarded a judgment to Ms. Harper in the amount of $3,555.40.[3] The court denied Dixon Construction's request for an award of attorney's fees and Ms. Harper's oral motion, made at trial, that she be substituted as a plaintiff in her capacity as trustee for her son, to whom she had conveyed her interest in the home in trust. The court entered a final order incorporating its findings and conclusions of law on February 2, 2015. Ms. Harper timely appealed.

## II. Issues Presented

Ms. Harper presents three issues for our review, which we restate as follows:

1. Whether the trial court erred in determining the amount of damages awarded to Ms. Harper for the cost of repairing the defects in the Remodeling Project.

2. Whether the trial court erred by crediting Dixon Construction with the unpaid balance of the contract.

3. Whether the trial court erred by denying Ms. Harper's motion to substitute herself as a plaintiff in her capacity as a trustee for her son.

## III. Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v.*

---

[3] As we will address in a subsequent section of this opinion, two mathematical errors are apparent in the trial court's calculations, the first being that subtracting $3,425.00 from $7,380.40 actually yields a total of $3,955.40, rather than $3,555.40.

5

*Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). We review the trial court's conclusions of law, including its interpretation of a written agreement, *de novo* with no presumption of correctness. *See Ray Bell Constr. Co., Inc. v. State, Tenn. Dep't of Transp.*, 356 S.W.3d 384, 386 (Tenn. 2011); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). While "the amount of damages to be awarded in a particular case is essentially a fact question," "the choice of the proper measure of damages is a question of law . . . ." *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. Amount of Damages Awarded to Ms. Harper

Ms. Harper contends that the trial court erred by awarding damages in an amount below that required to place her in the position she would have been in if not for Dixon Construction's breach of contract. She specifically argues that the expert witness testimony supported an estimate of $58,805.40 as the cost of repair for the damages and that Dixon Construction failed to demonstrate that this estimate was unreasonable. Dixon Construction raises no issue on appeal regarding the trial court's finding that Dixon Construction had "substantially and materially breached the terms and conditions of the contract."[4] As to damages, Dixon Construction contends that the trial court properly considered the evidence to determine that the cost of repair was $7,380.40. Upon a

---

[4] Tennessee courts consider the following factors when determining whether a breach is material:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Forrest Constr. Co., LLC v. Laughlin*, 337 S.W.3d 211, 225-26 (Tenn. Ct. App. 2009) (quoting Restatement (Second) of Contracts § 241) (other internal citations omitted).

thorough review of the record and with modification to correct two mathematical errors in the judgment, we conclude that the evidence does not preponderate against the trial court's findings regarding the amount of damages awarded to Ms. Harper.

"The purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed." *Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990). In breach of construction contract actions, Tennessee courts have adopted two possible methods of measuring damages: (1) the cost of repair to correct defects and complete the work or (2) the diminution in value of the property from what it would have been worth if the work had been performed in accordance with the contract to what the property is worth with the construction as actually performed. *See GSB Contractors,* 179 S.W.3d at 543; *Buttrey v. Holloway's, Inc.*, No. M2011-01335-COA-R3-CV, 2012 WL 6451802 at *7-8 (Tenn. Ct. App. Dec. 12, 2012). This Court has held that "'[g]*enerally,* the measure of damages will be the cost or repair *unless* the repairs are not feasible or the cost is disproportionate to the diminution in value.'" *GSB Contractors,* 179 S.W.3d at 543 (quoting *Radant v. Earwood,* No. 02A01-9802-CV-00029, 1999 WL 418339 at *8 (Tenn. Ct. App. June 22, 1999)) (emphasis in *GSB Contractors*).

In the instant action, the parties do not dispute that the proper measure of damages is the cost of repairing the defects and omissions in the Remodeling Project. *See, e.g., Buttrey*, 2012 WL 6451802 at *9 ("Since there was no proof as to [the house's] diminution in value, the proper measure of damages herein is the cost to repair the defects."). Neither party presented evidence regarding the value of the Property, and the trial court made no findings regarding diminution of value. Ms. Harper's argument regarding damages is based on her assertion that the trial court did not properly weigh the evidence presented at trial when determining the amount of the cost of repair.

Ms. Harper presented three expert witnesses at trial: Donnie Edward Bentley, a home inspector licensed in Tennessee, who had documented the condition of the subject kitchen in June 2013; Ernest Hill, a licensed contractor, who had prepared an estimate for the cost of repairing the kitchen in October 2013; and Bruce Stanley Cantrell, P.E., a structural engineer, who had conducted a structural observation and evaluation of the Property in April 2014. Although Mr. Bentley estimated the cost of repairing certain specific items, Mr. Hill was the only witness who proffered an estimate of the cost of repairing the entire kitchen. Ms. Harper asserts that the trial court should therefore have adopted Mr. Hill's total estimate in the amount of $58,805.40 as the cost of repair. We disagree.

In general, Ms. Harper argues that the trial court should have adopted Mr. Hill's estimate in total because Dixon Construction did not present competing estimates regarding the cost of repair. Her argument in this regard is flawed because it is based on the burden-shifting standard a defendant must meet to prove that diminution of value is the proper measure of damages. It is the plaintiff's burden in a breach of contract action to prove damages by a preponderance of the evidence. *See Buttrey*, 2012 WL 6451802 at *7 (citing *Fed. Ins. Co. v. Winters,* 354 S.W.3d 287, 291 (Tenn. 2011); *ARC Life-Med, Inc. v. AMC-Tenn, Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Relying on this Court's decision in *Buttrey*, Ms. Harper argues that upon her presentation of evidence regarding the cost of repair, "the burden shift[ed] to the defendant to show that the cost of repairs [was] unreasonable when compared to the diminution in value due to the defects and omissions." As previously noted, neither party has argued, at trial or on appeal, that diminution of value is the proper measure of damages, nor has either party presented any evidence regarding the value of the home. *See Buttrey*, 2012 WL 6451802 at *8 (explaining that if a defendant seeks to prove that diminution of value is the proper measure of damages, "'the burden is on the defendant to show that the cost of repairs is unreasonable when compared to the diminution in value due to the defects and omissions.'") (quoting *GSB Contractors*, 179 S.W.3d at 543) (in turn quoting *Nutzell v. Godwin,* 1989 WL 76306 at *2 (Tenn. Ct. App. July 13, 1989)).

Throughout cross-examination, Dixon Construction's counsel challenged the speculative nature of several line items in Mr. Hill's estimate. For example, Mr. Hill included in his estimate $8,000.00 as "allow[ance] for additional cost upon discovery of hidden factors." The amount of this one ambiguous item in Mr. Hill's estimate equals fully two-thirds of the parties' original contract price. The trial court was not required to accept Mr. Hill's estimate wholesale simply because it was the only total estimate presented. *See Forrest Constr. Co., LLC v. Laughlin*, 337 S.W.3d 211, 233 (Tenn. Ct. App. 2009) ("The trial judge, as the trier of fact, is not compelled to unequivocally accept expert opinions.").

The trial court in its final judgment made the following specific findings of fact regarding the elements of the contract materially breached by Dixon Construction and the cost of repairing defects and completing unfinished work:

> The Court finds that Ms. [Harper] has proven by [a] preponderance of the evidence that Eric Dixon Construction, LLC, substantially and materially breached the terms and conditions of the contract in the following ways:
>
> A.   By failing to level the kitchen floor as expressly stated in the contract between the parties. The Court credits the testimony of

Donnie Bentley on this issue. Further, the Court resolves any conflicts in the testimonies between the parties[] in favor of Ms. [Harper];

B. By failing to install a new beam and support post in place of the existing wall. It's clear from all the proof that there was what is commonly referred to as a header that was put up in place of the beam and post, and the Court, with regard to how that came about, the Court resolves any conflicts in the testimony between the parties[] in favor of Ms. [Harper] and accredits her testimony;

C. By failing to install 3 feet by 6 feet 8 inch door through the existing frame wall, as admitted by Eric Dixon;

D. In this regard, the Court finds that Ms. [Harper] was justified in refusing to allow Eric Dixon to complete any unfinished work or remedy any deficient work, because the proof was uncontradicted that Mr. Dixon did strike her husband in her presence, and threatened to strike her;

E. By failing to perform electrical work in a workmanlike manner. With regard to failing to perform electrical work in a workmanlike manner, the Court does credit the testimony of Donnie Bentley and Ernest Hill;

F. By failing to install the cabinets in a workmanlike manner;

G. The Court does credit the testimony of Mr. Hill in regard to its finding that Mr. Dixon failed to install the cabinets in a workmanlike manner. The Court specifically is referring to the uneven trim that is admitted into evidence in Exhibit No. "13[."]

With regard to damages, the Court finds that Eric Dixon Construction, LLC, is liable for damage to Ms. [Harper] as follows:

1. $6,315.40 to perform the necessary work to level the floors, which includes removing the tile from the floor, repairing and replacing the bad floor, and the tile backer board. The Court credits the testimony of Mr. Ernest Hill in that regard.

9

2.     $965.00 to redo the beams in the kitchen, add two posts, and paint. The $965.00 includes damages for repairing a hole in the ceiling.

3.     $100.00 in labor to hang the door, and $100.00 to remedy the deficient electrical work.  The Court credits the testimony of Mr. Hill and Mr. Bentley in that regard.

[4].   There's no evidence in the record with regard to the cost to replace the trim work and any other repair, for a total amount of damages awarded to Plaintiff in the amount of $7,380.40.

The trial court thus based its calculation of damages on five items requiring repair in order to bring them into compliance with the requirements of the parties' contract. Specifically, the court found that Dixon Construction failed to (1) properly level the floor, (2) properly install ceiling beams and support posts, (3) install the 3'x6'8" door through the existing frame wall between the new addition and the pantry, (4) perform electrical work in a workmanlike manner, and (5) install cabinets in a workmanlike manner. *See Brewer v. Kitchen Designs & Cabinetry*, No. M2012-01248-COA-R3-CV, 2013 WL 1400619 at \*8 (Tenn. Ct. App. Apr. 5, 2013) ("[I]n Tennessee, every construction contract is 'accompanied by an implied obligation to perform the service skillfully, carefully, diligently, and in a workmanlike manner.'") (quoting *Fed. Ins. Co. v. Winters,* 354 S.W.3d 287, 292 (Tenn. 2008)).  Inasmuch as Ms. Harper does not dispute the trial court's findings regarding the manner in which Dixon Construction materially breached the contract, we will address the court's calculation regarding the cost of repair for each item in turn.

First, in finding that Dixon Construction had failed to properly level the flooring in the kitchen, the trial court credited the testimony of Mr. Bentley, who testified that the tile had been installed without leveling the floor underneath.  Mr. Bentley stated that in the location where the remodeled floor joined the existing floor, the alignment was "almost an inch out" over "the width of a couple of tiles."  Mr. Cantrell and Mr. Hill corroborated testimony that the kitchen floor was not level.  The court credited Mr. Hill's testimony in calculating the cost of repair for leveling the floor at $6,315.40, including "removing the tile from the floor, repairing and replacing the bad floor, and the tile backer board."  Although crediting Mr. Hill's testimony, the trial court found the cost of repairing the floor to be an amount $5,245.00 less than Mr. Hill's total estimate related to the flooring.  Dixon Construction argues that although the court accepted Mr. Hill's estimate for labor, it did not accept much of Mr. Hill's estimate for the cost of new tile. Ms. Harper does not address the trial court's specific finding in this regard but rather maintains her argument that the trial court should have accepted Mr. Hill's estimate for the entire project.

10

Mr. Hill included in his written estimate and testimony the following itemized costs related to leveling the floor:

- remove tile from floor:                                       $ 745.00
- remove tile backer board:                              245.00
- repair and replace bad floor joist and underlayment:    960.00
- materials to relay floor tile and backer board:         7,485.00
- labor to lay tile, grout and seal:                   1,865.40
- grout to finish floor, sealer:                        260.00

Mr. Hill's total floor leveling estimate:          $11,560.40

Regarding his estimate for new floor tile, Mr. Hill acknowledged that although he had dealt previously with the type of tile used in the Remodeling Project, he did not know the exact cost of the style. He also acknowledged that he did not know if Ms. Harper possessed any remaining tiles. Mr. Dixon and Ms. Harper each respectively testified that Ms. Harper had provided the floor tiles. Ms. Harper did not refute Mr. Dixon's testimony that at the time Dixon Construction vacated the Property, several pallets of tile remained in Ms. Harper's basement. We conclude that the evidence does not preponderate against the trial court's elimination of much of Mr. Hill's estimate for the cost of replacement tiles while nonetheless accepting Mr. Hill's estimate for labor and other costs related to the flooring.[5] We therefore affirm the amount of $6,315.40 as the cost of leveling the floor.

Second, the trial court found that it was "clear from all the proof" that instead of installing a "new beam and support post in place of the existing wall," as provided in the contract, Dixon Construction had erected a "header," which in this instance constituted a large beam running across the ceiling. Ms. Harper and Mr. Hill each respectively testified that the header gave the appearance of separating the kitchen into two separate areas. Mr. Hill identified the "header" beam in a photograph of the kitchen admitted into evidence. Although Mr. Dixon testified that he had installed the header at Ms. Harper's request, the trial court credited Ms. Harper's testimony that she had not understood from Mr. Dixon's explanation that she would have a beam "totally separat[ing]" the kitchen. In calculating the cost of repairing this item, the trial court adopted Mr. Hill's estimate of $865.00 to "re do beam in kitchen" and add two support posts. The court included an

---

[5] At the close of Mr. Hill's testimony, Dixon Construction's counsel moved to exclude Mr. Hill's overall estimate as not based on "reasonable expertise." In denying the motion, the trial court stated that "[s]ome of this information [in Mr. Hill's estimate] could assist" the court, noting particularly Mr. Hill's "line items," in "two or three different categories." The court acknowledged Dixon Construction's argument, however, regarding speculation as to "the cost of cabinets and different things . . . ."

11

additional $100.00 "for repairing a hole in the ceiling." Mr. Bentley and Ms. Harper each respectively testified that a hole had been left in the ceiling near the pendant lighting in the kitchen. Although Mr. Dixon testified that Ms. Harper had requested that the hole be left for her "sheetrock finisher" to "patch," the court credited Ms. Harper's testimony that Dixon Construction was responsible for the cost of repairing the hole. The evidence also does not preponderate against the trial court's finding as to the cost of repair for the beam, support posts, and ceiling.

Third, the trial court found that the cost of hanging the 3'x6'8" door through the existing frame wall between the new addition and the pantry would be $100.00 in labor. Mr. Dixon acknowledged that although the door had been ordered and the frame readied, he had not hung the door. Ms. Harper does not dispute the trial court's specific finding regarding the cost of hanging the door, and we determine that the evidence does not preponderate against the trial court's finding in this regard.

Fourth, the trial court found that that the cost to "remedy the deficient electrical work" would be $100.00. Mr. Bentley testified that there were "two missing knockouts in the electrical panel" that would cost approximately $10.00 to repair, as well as three separate locations in the kitchen and one in the attic with open electrical wiring or no junction box installed. Mr. Bentley opined that repairing a missing or unsecured junction box is "another one of those inexpensive important fixes." analogous to the $10.00 repair he had noted for the electrical panel. Although Mr. Hill included a line item in his estimate of $1,800.00 to "repair wiring as needed," he explained that he was anticipating the possibility of rewiring due to recessing the header beam. Mr. Hill acknowledged that the only exposed wiring he observed was under a cabinet.

We conclude that the trial court's finding of $100.00 as the amount required to repair the electrical work was within the range of the amounts presented at trial. *See, e.g., Webster v. Estate of Dorris*, No. M2014-02230-COA-R3-CV, 2016 WL 502009 at *10 (Tenn. Ct. App. Feb. 4, 2016) (affirming the amount of damages awarded by the trial court upon finding that "[t]he 'amount of damages awarded by the Trial Court falls within the span of the disparate amounts presented at trial by Plaintiffs and Defendants.'") (quoting *Wright v. Stevens,* No. 03A01-9903-CH-00064, 1999 WL 1212166 at *4 (Tenn. Ct. App. Dec. 17, 1999)). We note, however, that in calculating the total cost of repair, the trial court appears to have inadvertently left the second $100.00 amount out of the total. We therefore modify the total award of damages to Ms. Harper to add $100.00 for the cost of repairing the electrical work.

Finally, the trial court found that Dixon Construction had failed to install the cabinets in a workmanlike manner. The court specifically referred to a photograph admitted at trial, demonstrating uneven trim on the bottom of two side-by-side cabinets.

12

Mr. Hill stated that it appeared as though some of the cabinets had been "shimmed" or "shaved" due to the uneven floor. The trial court further found, however, that there was "no evidence in the record with regard to the cost to replace the trim work . . . ." Ms. Harper argues that the trial court erred in this regard, again asserting that the court should have adopted Mr. Hill's total repair estimate in the amount of $58,805.40. Ms. Harper does not address the cost of repair for the specific defect the court found in Dixon Construction's installation of the cabinets.

Mr. Hill provided in his estimate the following line items regarding cabinets:

- remove cabinets:                                    $    800.00
- re[-]install cabinets:                                   1,150.00
- replacement cabinets:                               24,680.00

Mr. Hill's total cabinetry estimate:                 $26,630.00

In contrast to the trial court's finding that the uneven trim on the cabinetry required repair, Mr. Hill based his estimate on complete removal of the cabinets installed by Dixon Construction and installation of new cabinets. When questioned regarding why he included the cost of all new cabinetry in his estimate, Mr. Hill stated: "If we damage cabinets taking them out, I may not be able to find that cabinet style and brand to go back, so it was included, replacement cabinets as a total rather than trying to refurbish one unit that's been damaged." He acknowledged that the need for replacement cabinets may or may not occur during repair of the Remodeling Project. We conclude that the evidence does not preponderate against the trial court's finding that Ms. Harper had failed to provide an estimate for the cost of repairing the uneven trim on the cabinets.

We therefore affirm the trial court's award of damages to Ms. Harper with the addition of the $100.00 originally omitted from the court's calculation of the individual damages delineated in the judgment. As modified, the total amount of damages awarded to Ms. Harper is $7,480.40.

V.  Offset of Balance Owed Dixon Construction

Ms. Harper asserts that the trial court erred by offsetting its award to her by the $3,425.00 the court found she owed to Dixon Construction under the contract. She argues that Dixon Construction should be precluded from recovering damages because it committed the first material, uncured breach of contract. Dixon Construction asserts that the trial court properly credited it with the balance of the contract price that Ms. Harper had promised to pay while awarding to Ms. Harper the cost of repairing the Remodeling Project. Upon our careful review, we conclude that the evidence does not preponderate

against the trial court's offsetting of Ms. Harper's award by the $3,425.00 she owed Dixon Construction for the balance of the contract.

As Ms. Harper correctly notes, "the party that first materially breached a contract is 'not entitled to damages stemming from the other party's later material breach of the same contract.'" *See Forrest Constr. Co.*, 337 S.W.3d at 226 (quoting *United Brake Sys., Inc. v. Am. Envtl. Prot.,* 963 S.W.2d 749, 756 (Tenn. Ct. App. 1997)) (other internal citations omitted). In this case, the trial court found that Dixon Construction materially breached the contract by failing to complete several components of the Remodeling Project in a workmanlike manner. Moreover, the trial court found that Ms. Harper was justified in not allowing Dixon Construction an opportunity to cure the defects due to undisputed testimony that Mr. Dixon had struck Mr. DeArmond and placed Ms. Harper in fear of being struck when the altercation over placement of the microwave occurred. *See Custom Built Homes by Ed Harris v. McNamara*, No. M2004-02703-COA-R3-CV, 2006 WL 3613583 at *5 (Tenn. Ct. App. Dec. 11, 2006) (explaining that "[r]equiring notice and a reasonable opportunity to cure defects in the performance of a contract is . . . designed to allow the defaulting party the opportunity 'to repair the defective work, to reduce the damages, to avoid additional defective performance, and to promote the informal settlement of disputes.'") (quoting *Carter v. Krueger*, 916 S.W.2d 932, 935 (Tenn. Ct. App. 1995)). On appeal, Dixon Construction does not dispute the trial court's finding that Ms. Harper was justified in not providing Dixon Construction an opportunity to cure defects. Dixon Construction therefore committed the first material breach of the contract.

As Dixon Construction maintains, however, Ms. Harper may not benefit from Dixon Construction's breach beyond the benefit she would have derived from the contract, inclusive of addendums. This Court has explained:

"When a contractor fails to perform a contract for construction or fails to complete the project, then the measure of damages sustained by the owner is the difference between the contract price and the cost of finishing the work according to the contract." *Harley* [*v. Harrison,*] [No. M2005-02099-COA-R3-CV]*,* 2006 WL 2644372, at *3 [(Tenn. Ct. App. Sept. 13, 2006)] (citing *St. John v.. Bratton,* 150 S.W.2d 727, 728 (Tenn. Ct. App. 1941)).

* * *

The purpose of assessing damages in a breach of construction contract case is to place the non-breaching party in the position the non-breaching party would have been in had the contract been performed properly. *GSB Contractors, Inc.,* 179 S.W.3d at 541. The fundamental

14

principle which underlies the measure of damages for defects or omissions in the performance of a construction contract is that "a party is entitled to have what he contracts for or its equivalent." *Edenfield v. Woodland Manor, Inc.,* 462 S.W .2d 237 (Tenn. Ct. App. 1970).

*Custom Built Homes*, 2006 WL 3613583 at *6.

The trial court in its final judgment stated in relevant part:

With regard to Mr. Dixon's counter complaint, the Court finds that Ms. [Harper] owes Eric Dixon Construction, LLC, $3,425.00.

The court then subtracted the amount that Ms. Harper owed from the damages awarded to her for the cost of repairing the Remodeling Project. We determine that rather than awarding Dixon Construction recovery on its breach of contract claim, the trial court was actually treating the amount owed on the contract as a set-off. *See Huggins v. McKee*, 403 S.W.3d 781, 786 (Tenn. Ct. App. 2012) (explaining in pertinent part that a set-off "'is the right which exists between two parties, each of whom under an independent contract owes an ascertained amount to the other, to set-off their respective debts by way of mutual deduction, so that in any action brought for the larger debt the residue only, after deduction, may be recovered.'") (quoting 80 C.J.S. Set-off and Counterclaim § 3 (2000)) (footnote omitted).

Ms. Harper is entitled to have the remodeled kitchen for which Dixon Construction and she contracted at the cost of $14,425.00, inclusive of the contract addendums. Ms. Harper paid Dixon Construction a total of $11,000.00. The trial court found that the cost to Ms. Harper to repair defects in Dixon Construction's work would be $7,480.40, as modified by the correction noted in the previous section of this opinion. The difference between the contract price and the amount paid to Dixon Construction was $3,425.00. To recover from Dixon Construction, Ms. Harper needed to establish that it would require more than $3,425.00 to repair defects or complete work on the Remodeling Contract in accordance with the parties' contract. *See, e.g., Custom Built Homes*, 2006 WL 3613583 at *7 (explaining that in order to recover from the contractor, the homeowners needed to establish that more than the difference between the contract price and the amount they had paid the contractor was required to repair or complete work for which the contractor was originally responsible).

The trial court found that Ms. Harper established a total cost of repair in the amount of $7,480.40. The court accordingly found that this amount should be reduced by the $3,425.00 balance Ms. Harper owed on the contract, meaning that she would obtain the remodeled kitchen for which she had contracted in return for the amount she had

contracted to pay: $14,425.00. We agree with the trial court's conclusion in this regard and affirm the set-off. *See, e.g., Case Handyman Serv. of Tenn., LLC v. Lee*, No. M2011-00751-COA-R3-CV, 2012 WL 2150857 at *8-9 (Tenn. Ct. App. June 13, 2012) (affirming the trial court's award to the homeowner of $18,000.00 in damages for the contractor's breach of contract in the form of relieving the homeowner from her contractual obligation to pay $18,000.00).

We must correct an apparent mathematical error in the trial court's calculation of the set-off. In subtracting $3,425.00 from the initial damages award of $7,380.40, the trial court concluded that the sum to be awarded to Ms. Harper was $3,555.40. This calculation actually yields a sum of $3,955.40. Adding this amount to the omitted $100.00 noted previously, we conclude that the total amount of damages to be awarded to Ms. Harper is $4,055.40.

## VI. Denial of Motion to Substitute

Ms. Harper also contends that the trial court erred by denying her motion to substitute herself as a plaintiff in her capacity as trustee for her son, John Michael Williams. She argues that pursuant to Tennessee Rule of Civil Procedure 15.01, she could have amended her pleading "by leave of court" and that inasmuch as such "leave shall be freely given when justice so requires," *see id.*, the trial court abused its discretion by denying the motion. *See State, Dep't of Human Servs. v. Hauck*, 872 S.W.2d 916, 919 (Tenn. Ct. App. 1993) ("[R]ules relating to amendment of pleadings are liberal and [a] trial court's discretion in allowing amendments *at any stage of the proceeding* should not be disturbed on appeal unless it plainly appears that such discretion was abused.") (emphasis in original). Dixon Construction asserts that the trial court did not abuse its discretion by denying Ms. Harper's oral motion made during trial. We agree with Dixon Construction on this issue.

During cross-examination at trial, Dixon Construction's counsel questioned Ms. Harper regarding title to the Property. Ms. Harper insisted that she had resided on the Property for thirty years and that it was her home. Dixon Construction presented a duly recorded quitclaim deed reflecting that on December 13, 2006, Michael Wayne Williams as trustee for John Michael Williams had conveyed his interest in the Property to Ms. Harper as trustee for John Michael Williams. The quitclaim deed, subsequently admitted into evidence, referenced a previously recorded warranty deed reserving a life estate on behalf of Ms. Harper and providing that John Michael Williams "cannot sale, assign, transfer or convey [the Property] until he is thirty-five (35) years of age . . . ." Ms. Harper testified that she had conveyed title to the Property to her son when he was two and one-half years of age. She also testified that her son was an adult at the time of trial, although she did not specify his exact age. In an apparent effort to impeach Ms. Harper,

Dixon Construction's counsel referenced deposition testimony in which Ms. Harper had stated that she owned the home.

Following the close of Ms. Harper's proof at trial, her counsel orally moved to substitute her as a plaintiff in her capacity as trustee for her son. Dixon Construction's counsel objected. Regarding Ms. Harper's motion, the following exchange occurred in relevant part:

| | |
|---|---|
| Ms. Harper's Counsel: | Before I rest, your Honor, we need to take up this issue of the title to the property that he's raised for the first time in the trial. |
| | The deed is Patricia Ann Williams Harper, Trustee for John Michael Williams, who is her son, and she has sued in her name only because she was the [contracting] party. But I need the Court to, at this point, substitute in her as Trustee for her son, if that's going to be an issue. |
| The Court: | For what reason? I don't see that it would be any sort of defense. |
| Ms. Harper's Counsel: | Well, I'm just being overly cautious. If it's not, then that's fine. If it's not some sort of defense, then I withdraw that motion. |
| The Court: | What do you say, [Dixon Construction's Counsel], about the purpose of asking that question? |
| Dixon Construction's Counsel: | The purpose of my asking that question, your Honor, is our position is if she's saying there was any damage done, that she doesn't own it, so if there's any damages done to it, which we certainly deny, if they're trying to claim that there's any contract with any |

17

|  |  |
|---|---|
|  | indispensable party he controls, this was conveyed to him, according to her testimony when he was a child, but he is now an adult and so she would not have standing at all to bring suit. |
| The Court: | Well, she's still title trustee. She could be – I think it's at least – I mean, she still stands – or has a fiduciary relationship with this person, then I would think a presumption of duty to protect the property. The issue has never been raised before today, right? |
| Ms. Harper's Counsel: | No. |

The court took Ms. Harper's motion under advisement until close of trial, at which time the court denied the motion without further explanation.

Although neither party has cited Tennessee Rule of Civil Procedure 17.01, we determine Rule 17.01 to be instructive regarding this issue. Rule 17.01 provides in pertinent part:

> Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, bailee, trustee of an express trust, a party to whose rights another is subrogated, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his or her own name without joining the party for whose benefit the action is brought . . . .

Pursuant to Rule 17.01, Ms. Harper had standing to prosecute this action in her own name even if, *arguendo*, she were acting as trustee over her son's ownership of the home or entered into the contract partially to benefit her son. Furthermore, as the trial court noted, Ms. Harper was the party who had entered into the contract. *See Akers v. Buckner-Rush Enters., Inc.*, 270 S.W.3d 67, 74 (Tenn. Ct. App. 2007) (holding that the plaintiffs "who actually signed" a contract for funeral services were the parties who had standing to bring a breach of contract action based upon a breach of the document they signed).

Moreover, the record demonstrates that Dixon Construction did not pursue any issue regarding Ms. Harper's standing to prosecute this action at trial, and the issue of standing has not been raised on appeal. We determine that the trial court did not abuse its

18

discretion by denying Ms. Harper's motion to substitute herself in her capacity as trustee for her son.

## VII. Conclusion

For the reasons stated above, we correct two mathematical errors to modify the amount of the judgment in favor of Ms. Harper to $4,055.40 from the trial court's initial calculation of $3,555.40. We affirm the trial court's judgment in all other respects. The costs on appeal are assessed against the appellant, Patricia Harper. This case is remanded to the trial court, pursuant to applicable law, for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE